**SMILECARE DENTAL GROUP,**
**Plaintiff–Appellant,**

v.

**DELTA DENTAL PLAN**
**OF CALIFORNIA, INC.,**
**Defendant–Appellee.**

No. 94–56191.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 4, 1996.

Decided July 5, 1996.

Maxwell M. Blecher, Blecher & Collins, Los Angeles, California, for plaintiff-appellant.

Matthew L. Larrabee, Heller, Ehrman, White & McAuliffe, San Francisco, California, for defendant-appellee.

Before PREGERSON and T.G. NELSON, Circuit Judges, and LYNCH,* District Judge.

T.G. NELSON, Circuit Judge:

SmileCare Dental Group ("SmileCare") and Delta Dental Plan of California, Inc. ("Delta Dental") are dental insurers offering health care plans to employers, labor unions, and individuals. Delta Dental offers a co-payment plan under which it pays participating dentists a portion of their fee and requires them in return to collect the remainder, or co-payment, from their patients at the time of service. SmileCare offers a supplemental plan which provides coverage for the co-payment. Delta Dental does not recognize co-payments made by supplemental in-

---

* Honorable Eugene F. Lynch, United States District Judge for the Northern District of California, sitting by designation.

surers as contractually valid, and deems participating dentists who accept such payments to be in breach of contract.

SmileCare appeals the district court's dismissal for failure to state a claim, alleging that Delta Dental's policy violates Section 2 of the Sherman Act, 15 U.S.C. § 2, because it illegitimately restricts competition and is aimed at eliminating SmileCare's supplemental dental plan. *Amici* Travelers Insurance Co., Prudential Insurance Co. of America and Golden Rule Insurance Co. appear in support of Delta Dental. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEDURAL HISTORY

Both parties are dental insurers offering a variety of health care plans to employers, labor unions and individuals. According to SmileCare, sixty percent of all California residents with dental insurance are covered by Delta Dental. Ninety-five percent of California dentists are enrolled, on a nonexclusive basis, as Delta Dental service providers. Delta Dental offers a full coverage plan, but covers most of its insureds through its co-payment plans, which are considerably cheaper. Under the co-payment plan, Delta Dental pays participating dentists a portion of their fee and requires that the dentists recover the remainder directly from the patient as a co-payment. Dentists set their own fees, subject to approval by Delta Dental, and Delta Dental determines the amount of co-payment required according to the type of treatment performed. Delta Dental's contract with its service providers prohibits them from waiving the co-payment.

SmileCare offers a variety of dental health plans, but its primary business is a coverage plan called "SmileCare Coverage Plus," which is designed to supplement co-payment plans such as Delta Dental's. By paying participating dentists the co-payment, or an agreed-upon portion of the co-payment, Coverage Plus purports to fulfill the patient's payment obligations to the dentist. Coverage Plus subscribers are thereby provided with full dental coverage. According to SmileCare, Delta Dental has acted to thwart SmileCare and injure the consumer by refusing to accept co-payments from supplemental insurers. Delta Dental providers who accept SmileCare payments in lieu of patient co-payments are deemed by Delta Dental to be in breach of contract, and are allegedly penalized with reduced fee payments, threats of termination, and, in some cases, actual termination.[1]

SmileCare filed its first complaint against Delta Dental on September 8, 1993, alleging a violation of Section 2 of the Sherman Act. The complaint also alleged various causes of action under state law, which, as noted above, are not at issue on appeal. The district court granted Delta Dental's motion to dismiss with leave to amend. SmileCare's amended complaint, filed February 25, 1994, alleged virtually the same factual predicate as the first complaint, but also characterized Delta Dental's conduct as a "group boycott." On July 25, the district court dismissed SmileCare's federal claims with prejudice under Fed.R.Civ.P. 12(b)(6). *Smilecare Dental Group v. Delta Dental Plan of California,* 858 F.Supp. 1035 (C.D.Cal.1994). SmileCare timely appeals.

## ANALYSIS

*Standard of review.*

■■ Dismissal pursuant to Fed.R.Civ.P. 12(b)(6) is reviewed *de novo. Everest & Jennings v. American Motorists Ins. Co.,* 23 F.3d 226, 228 (9th Cir.1994). All allegations of material fact are taken as true and con-

---

1. SmileCare also alleges that Delta Dental's conduct is in violation of Cal. Health & Safety Code § 1371.2, which provides that health service care providers may not:

> reduce the level of payment to a provider based solely on the allegation that the provider has entered into a contract with any other licensed health care service plan for participation in a benefit plan that has been approved by the commissioner.

According to SmileCare, the statute "forbids Delta Dental from reducing the level of payments to supplemental plan dentists." Delta Dental responds that its actions were prompted by providers' breach of contract, and not "solely" on their participation in another health care plan. The district court dismissed SmileCare's state law claims, including the statutory claim, without prejudice. The state law claims are not at issue on appeal.

strued in the light most favorable to the plaintiff. *Id.* at 229. A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* The court may dismiss a complaint as a matter of law for "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984).

■■ Whether specific conduct is anticompetitive is a question of law reviewed *de novo. Oahu Gas Serv., Inc. v. Pacific Resources, Inc.,* 838 F.2d 360, 368 (9th Cir.), *cert. denied,* 488 U.S. 870, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988). Dismissal for failure to state a claim is appropriate where "the complaint states no set of facts which, if true, would constitute an antitrust offense, notwithstanding its conclusory language regarding the elimination of competition and improper purpose." *Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 735 (9th Cir.1987) (quotations and alteration omitted).

### I

■■ Section 2 of the Sherman Act provides: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other persons, to monopolize any part of the trade or commerce ... shall be deemed guilty of a felony...." 15 U.S.C. § 2. "In order to state a claim for monopolization under Section 2 of the Sherman Act, a plaintiff must prove: (1) Possession of monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury." *Pacific Express, Inc. v. United Airlines, Inc.,* 959 F.2d 814, 817 (9th Cir.), *cert. denied,* 506 U.S. 1034, 113 S.Ct. 814, 121 L.Ed.2d 686 (1992). The following elements are required to establish an attempt to monopolize claim: "(1) specific intent to control prices or destroy competition; (2) predatory or anticom-

petitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal antitrust injury." *Id.* Delta Dental does not dispute SmileCare's allegation that it possesses market power;[2] the remaining issue is whether SmileCare has adequately alleged intentional predatory or anticompetitive conduct and resultant injury.

The briefs of both parties and *amici* devote a great deal of space to evaluating the competitive merits of insurance co-payment plans. However, the legality of co-payment plans and waiver prohibition clauses is neither at issue nor seriously in question. In *Davidowitz v. Delta Dental Plan of California, Inc.,* 946 F.2d 1476, 1479 (9th Cir.1991), we adopted the Seventh Circuit's reasoning in *Kennedy v. Connecticut Gen. Life Ins. Co.,* 924 F.2d 698 (7th Cir.1991), approving an insurer's prohibition on providers' waiver of patient co-payments because "waivers annul the benefits of the co-payment system." 924 F.2d at 699. *Davidowitz* extended *Kennedy* to uphold Delta Dental's non-assignment policy barring beneficiaries from assigning benefits to nonparticipating providers. 946 F.2d at 1481. The non-assignment clause prevented nonparticipating dentists from asking their patients to assign the dentists their rights to receive Delta Dental's checks, typically in exchange for waiver of the co-payment. *Id.* at 1477 n. 1.

■ Notwithstanding its lengthy forays into the questionable market benefits of insurance co-payment plans, SmileCare repeatedly asserts that it is *not* challenging Delta Dental's co-payment scheme *per se.* Nor is it questioning Delta Dental's right to insist that providers not waive the co-payment. Rather, it is challenging Delta Dental's behavior in refusing to honor supplemental insurers' coverage of the patient's co-payment because it deems such coverage as tantamount to waiver of the co-payment. The key issue, then, is whether Delta Den-

---

2. According to the district court, "Delta Dental concedes that SmileCare has adequately alleged market power." *Smilecare,* 858 F.Supp. at 1037. While the parties do not discuss the issue of market power on appeal, we observe that market share does not necessarily equal market or monopoly power, which further requires an assess-

ment of such factors as ease of entry. *United States v. Syufy Enters.,* 903 F.2d 659, 664 (9th Cir.1990). *See also Ball Memorial Hosp., Inc. v. Mutual Hosp. Ins., Inc.,* 784 F.2d 1325, 1335–37 (7th Cir.1986) (where there are no barriers to entry, insurer with large market share lacked market power).

tal's refusal to recognize as contractually valid a participating dentist's acceptance of co-payment from a supplemental insurer rather than from the patient herself has any impermissible anticompetitive effects. *See Barry v. Blue Cross of California,* 805 F.2d 866, 871–72 (9th Cir.1986).[3]

The district court responded to this question after visiting the merits of co-payment plans themselves. *Smilecare,* 858 F.Supp. at 1038–39. The court opined that insurance creates a "moral hazard" because it desensitizes patients to cost and induces them to seek inordinate amounts of care; co-payments offset this hazard by forcing patients to reflect upon the cost of services and moderate their demands for treatment. *Id.* at 1038 (citing *Ball Memorial Hosp., Inc. v. Mutual Hosp. Ins., Inc.,* 784 F.2d 1325, 1332 (7th Cir.1986); *Kennedy,* 924 F.2d at 699–701, and *Davidowitz,* 946 F.2d at 1479). The district court denied as a matter of law SmileCare's contention that "supplemental plans are not waivers of co-payments, but rather are merely substitutes for them," based on its finding that supplemental plans create the same "moral hazard" as waivers because they render patients insensitive to cost. *Id.* at 1039.

We need not adopt the "moral hazard" theory or reach a conclusion as to the relative market advantage of co-payment plans to decide the instant case. As we stated in *Davidowitz,* "[we are] not called upon to weigh the wisdom or the public policy of payment assignability. That is the function of Congress. We merely hold the non-assignment clause is legal and is not prohibited by Congress." 946 F.2d at 1481. *See also Kennedy,* 924 F.2d at 702 ("Whether full

indemnity is preferable to a co-payment system is a question for the marketplace. The answer in this health plan is co-payments, and its terms will be enforced.")

The *Kennedy* court explained that,

[the defendant insurer's] policy require[s] co-payments in order to maintain incentives that hold down the cost of medical care. We could not break the circle in favor of reimbursement without abrogating the co-payment requirement-a requirement that [defendant] had every legal entitlement to create.... If [a provider] wishes to receive payment under a plan that requires co-payments, then he must collect those co-payments-or at least leave the patient legally responsible for them.

*Id.* The court added this instructive note: "[Plaintiff] observes that the patient's rich aunt or best friend may pay the 20% and asks rhetorically: Why can't the doctor pay? The answer is contractual: Because the plan and policy say that the physician must create a legal obligation in the employee or dependent." *Id.*

The same reasoning applies here. Delta Dental concedes that if SmileCare paid the *patient* the co-payment, and the patient then paid the dentist, it would have no objection or cause to find its providers in breach of contract. This would mirror the scenario with the rich aunt. However, because SmileCare pays the *dentist,* the legal obligation required of the insured is eliminated, distorting the actuarial basis for Delta Dental's co-payment plan.[4]

The district court denied as a matter of law SmileCare's argument that "Delta Dental's conduct is anticompetitive because it stamps out supplemental plans," based on its

---

3. Potential harm to SmileCare alone will not prove Smilecare's case. The courts have repeatedly observed that "the antitrust laws protect competition, not competitors." *United States v. Syufy Enters.,* 903 F.2d 659, 668 (9th Cir.1990). *See also Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island,* 883 F.2d 1101, 1110 (1st Cir.1989) ("Section 2 does not prohibit vigorous competition on the part of a monopoly. To the contrary, the primary purpose of the antitrust laws is to encourage competition."), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990).

4. The actuarial basis for Delta Dental's co-payment plan is premised on the theory that insureds will seek cheaper or less frequent treatment if they are forced to consider the pinch to their own wallets. When SmileCare pays the patient's portion of the fee, the patient has no reason to shop for a less expensive provider or to question the necessity of certain treatments. As the district court observed, "SmileCare and the patient pocket Delta Dental's loss. Of course, this windfall will be short-lived," for Delta Dental will raise its prices or abandon co-payment plans altogether as unprofitable. *Smilecare,* 858 F.Supp. at 1039.

finding that SmileCare's supplemental insurance plan does not compete with Delta Dental's primary plan. *Smilecare,* 858 F.Supp. at 1039.[5] "Competitive discipline comes not from supplemental plans, but from competing primary plans." *Id.* The court acknowledged that employees already covered through their employers or unions by Delta Dental's mandatory co-payment plan might wish to obtain 100% coverage by purchasing supplemental coverage. "If Delta Dental overcharges for supplemental plans, competitors will induce the patient's employer to switch mandatory co-payment plan providers.... As long as Delta Dental does not improperly attempt to crush competition in the primary plan market, it does not act anti-competitively." *Id.* at 1040 (footnotes omitted).

SmileCare maintains that it is competing with Delta Dental because its supplemental plan threatens Delta Dental's business and provides the consumer with a better product at a lower cost. It cites *Syufy* for the proposition that competition exists where parties impose "an essential discipline [on one another] to provide the consumer with a better product at a lower cost." *United States v. Syufy Enters.,* 903 F.2d 659, 663 (9th Cir. 1990). However, SmileCare's plan does not put pressure on Delta Dental to reduce the price of its co-payment plan. To the contrary, by eliminating the patient's contribution for each service, the supplemental plan eliminates the anticipated benefit of reduced demand for services. The supplemental plan thus has the potential to increase Delta Dental's costs, pressuring it to raise the cost of co-payment plans or eliminate them altogether, to the ultimate detriment of the consumer.

Instead of competing with Delta Dental directly, SmileCare would "discipline" Delta Dental by encroaching upon its method of disciplining its insureds. We therefore agree with the district court's conclusion that SmileCare and Delta Dental are not true competitors. Rather, SmileCare has found a niche in the coverage "gap" created by Delta Dental's co-payment plan, and now seeks to impose on Delta Dental its own way of doing business.[6] SmileCare fails to cite any provision under the antitrust laws that would require Delta Dental to modify a legitimate way of doing business in order to allow SmileCare to sell its plan.

■ Even assuming arguendo that the parties were competitors, SmileCare's claims that Delta Dental's conduct amounted to "group boycott" or "refusal to deal" in violation of the antitrust laws are not persuasive. SmileCare addressed these claims at greater length before the district court than on appeal. There SmileCare argued that "Delta Dental has used its dominant position in the market to coerce or induce third parties—dentists—to 'boycott' SmileCare supplemental coverage patients and plans," 858 F.Supp. at 1040, and that "Delta Dental has improperly refused to deal with [SmileCare's supplemental plan]." *Id.* at 1041. SmileCare does not take issue with the court's characterization of its claims.

On appeal, SmileCare cites *Klor's Inc. v. Broadway–Hale Stores, Inc.,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), and *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985), in support of its group boycott and refusal to deal claims.[7] In *Klor's,* the Su-

**5.** The court reasoned that moral hazard and antitrust price-fixing prohibitions require that supplemental and co-payment plans be offered by the same insurer. *See Smilecare,* 858 F.Supp. at 1038–39, 1039 n. 3 and 1040 n. 5.

**6.** Although the complaint alleges that SmileCare and Delta Dental are competitors, this is a legal conclusion which we are not bound to accept. *Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 735 (9th Cir.1987). Accepting as true all of the factual allegations in SmileCare's complaint, appellate brief, and oral argument, we conclude that SmileCare's supplemental plans merely fill a "gap," and therefore do not compete with Delta Dental's primary plans.

**7.** The parties also cite *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.,* 899 F.2d 951 (10th Cir.), *cert. denied,* 497 U.S. 1005, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990), and *Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island,* 883 F.2d 1101, 1110 (1st Cir.1989). SmileCare contends that *Reazin* is "on all fours" with the case at hand; Delta Dental makes the same claim for *Ocean State.*

In *Reazin,* an alleged conspiracy between Blue Cross and two of its participating hospitals to terminate a third hospital's contracting provider agreement and to reduce maximum allowable payments to participating hospitals was deemed an unlawful boycott and refusal to deal. *See* 899

preme Court held that an alleged conspiracy between Broadway–Hale and various manufacturers and distributors to refuse to sell to its competitor, or to sell to it only on unfavorable terms, stated a claim under Sections 1 and 2 of the Sherman Act. 359 U.S. at 209–13, 79 S.Ct. at 707–10. The district court found *Klor's* inapposite because it "only forbade a reseller from coercing suppliers not to sell competing goods to the reseller's competitor," and SmileCare and Delta Dental are not competitors. *Smilecare,* 858 F.Supp. at 1040. Whether or not the parties are in competition, we hold that SmileCare's failure to allege the essential element of conspiracy between Delta Dental and any other parties precludes a group boycott claim. *See Klor's,* 359 U.S. at 212, 79 S.Ct. at 709.

In *Aspen,* the Supreme Court considered a decision by a ski resort to back out of a ticket-sharing arrangement it had long held with a smaller competitor. The Court held that because the larger resort's decision "to change the character of the market" was not based on efficiency or any other legitimate business reason, its conduct was in violation of Section 2 of the Sherman Act. 472 U.S. at 604–10, 105 S.Ct. at 2858–61. We agree with the district court that this case, too, is inapposite. Unlike the defendant skiing company in *Aspen,* Delta Dental did not discontinue a marketing arrangement with SmileCare. Delta Dental's co-payment plan pre-existed SmileCare's supplemental plan and the parties have never co-operated to supply the market with a new or better product. Nor did Delta Dental impose the prohibition against waiver of the co-payment as a response to SmileCare's plan.

■ Furthermore, as the district court observed, it is well-established that competi-

tors do not have a general duty to deal with one another. *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 483 n. 32, 112 S.Ct. 2072, 2091 n. 32, 119 L.Ed.2d 265 ("as a general matter a firm can refuse to deal with its competitors. But such a right is not absolute; it exists only if there are legitimate competitive reasons for the refusal.") (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 602–605, 105 S.Ct. 2847, 2857–2859, 86 L.Ed.2d 467 (1985)); *Oahu,* 838 F.2d at 368 (duty to deal with competitors "arise[s] only when there is no justification for refusing to aid a competitor. Where a monopolist's refusal to aid a competitor is based partially on a desire to restrict competition, we determine antitrust liability by asking whether there was a legitimate business justification for the monopolist's conduct.").

While the existence of valid business reasons is ordinarily a question of fact, in the case before us it is a foregone conclusion requiring no further analysis: The validity of Delta Dental's business reasons for requiring its dentists to collect the co-payment directly from the patient has already been established by our decision in *Davidowitz.* We therefore agree with the district court that Delta Dental's policy is supported as a matter of law by a legitimate business justification-its interest in protecting the disciplinary effect of its co-payment plan. *Davidowitz,* 946 F.2d at 1479–81; *see also Kennedy,* 924 F.2d at 699–701.

Because Delta Dental's co-payment plan is concededly legitimate, and because SmileCare has failed to allege that Delta Dental's enforcement of its no-waiver clause has any anticompetitive effects, we affirm the district court.

AFFIRMED.

F.2d at 954–55. In *Ocean State,* the court approved Blue Cross's policy of reducing the fee schedules of participating providers who accepted lower fees from a competitor insurance company, holding that even if Blue Cross's application of its policy injured its competitor's business and was in fact *intended* to put its competitor out of business, Blue Cross committed no antitrust violation because the policy itself was legitimate. *Id.* at 1112–13.

Despite superficial similarities to the case before us, the cases cited concern substantially different issues. Both *Reazin* and *Ocean State* involve the propriety of mechanisms designed to

control health care costs directly through price agreements (sometimes called "Most Favored Nation" clauses) between insurers and providers. Here, the clause in question is not a price-setting arrangement, but what might be termed a patient-control mechanism. That is to say, the no-waiver provision is designed to control costs by making patients conscious of the price of dental care. It does not control the price of dental services, but rather the frequency with which they are used. Because we find the clause in question significantly different than the ones at issue in the cases cited, we do not consider them in reaching our decision.

PREGERSON, Circuit Judge, dissenting:

Because I believe that certain acts allegedly committed by Delta Dental, if proved, could constitute anticompetitive and predatory conduct within the meaning of the anti-trust laws, I dissent.

The majority opinion holds that Delta's conduct forcing SmileCare and other supplemental plans out of the dental insurance market cannot be interpreted as anticompetitive because Delta and SmileCare are not true competitors and because the business policy by which Delta justifies its allegedly anticompetitive conduct is legitimate. Based on the procedural posture of this appeal, I disagree.

On a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), facts alleged by the nonmoving party are presumed to be true. *Everest & Jennings v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir.1994). The district court contravened this rule when it made the "finding"—without any evidence—that "SmileCare's supplemental insurance plan does not compete with Delta's primary plans." *Smilecare*, 858 F.Supp. at 1039. The majority opinion now erroneously concludes that Delta and SmileCare are not true competitors based solely on the district court's "finding."

Both the district court's finding and the majority opinion's conclusion that Delta Dental's policy results in no impermissible anticompetitive effects rest on cases interpreting ERISA rather than the Sherman Act. *See* maj. op. at 784, 785; *Smilecare*, 858 F.Supp. at 1038–39 (citing *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1479 (9th Cir.1991) and *Kennedy v. Connecticut Gen. Life Ins. Co.*, 924 F.2d 698 (7th Cir.1991)). The purpose of ERISA is to protect employee benefits. By contrast, the purpose of the Sherman Act is to protect competition. *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224, 113 S.Ct. 2578, 2588, 125 L.Ed.2d 168 (1993). The issue in *Davidowitz*, whether a non-assignment clause is barred by ERISA, is an entirely different question from the issue in this case. The issue here is whether, under the Sherman Act, Delta Dental's actions in refusing to allow participating dentists to accept a co-payment from a supplemental insurer rather than the patient are lawful.

To decide whether Delta and SmileCare are competitors, the district court must first conduct a factual inquiry into the definition of the relevant market. *See Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir.1989). Defining the product market involves identification of the field of competition: the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business. Because a factual inquiry is necessary to determine this issue, *id.*, it was improper for the district court to decide it on a motion to dismiss.

The majority opinion then states that, assuming Delta and SmileCare were competitors, the key question is whether Delta's refusal to accept SmileCare supplemental payments in lieu of patients' co-payments has anticompetitive effects. The majority opinion holds that Delta's conduct is not anticompetitive because Delta has a legitimate business justification for its refusal to accept SmileCare's supplemental payments. This misguided analysis, however, puts the cart before the horse.

A business justification is a defense to allegations of anticompetitive conduct. *Phonetele, Inc. v. American Tel. and Tel.*, 664 F.2d 716, 739 (9th Cir.1981), *modified*, 1982 WL 11277 (1982), *and cert. denied*, 459 U.S. 1145, 103 S.Ct. 785, 74 L.Ed.2d 992 (1983). But to reach the business justification issue, a court must first decide whether the conduct is anticompetitive. If the court finds that the conduct is anticompetitive, the defendant must then affirmatively show that there was a valid business reason for the conduct. *Id.* Furthermore, whether a valid business reason justifies a monopolist's conduct is a question of fact. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 604–05, 105 S.Ct. 2847, 2858–59, 86 L.Ed.2d 467 (1985). It is therefore improper for a court to decide on a motion to dismiss whether a business justification exists.

In deciding this issue, what the district court has really done is to ignore the rule that on a motion to dismiss facts alleged by the nonmoving party are presumed true.

*Everest,* 23 F.3d at 228. Instead of taking as true all of SmileCare's allegations about the anticompetitive effects of Delta's conduct, the district court has turned the standard on its head by taking only Delta's asserted defense as true. It is improper for the court to make such an evaluation of asserted defenses at this stage in the proceedings. In fact, a court should not consider defenses at all on a motion to dismiss. All the court may do is decide whether or not the well-pleaded facts, if proved, could constitute a claim that would entitle the plaintiff to relief. This is where the inquiry should end.

Because SmileCare has alleged facts which, if proved, could entitle it to relief under the antitrust laws, *see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), this case should have survived a motion to dismiss. I would therefore reverse.